UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

OSCAR NUNEZ,                              )
                                         )
            Petitioner,                   )
                                         )
      v.                                  )      1:14-cr-00130-JAW-1
                                         )
UNITED STATES OF AMERICA,                 )
                                         )
            Respondent.                   )

**ORDER AFFIRMING THE RECOMMENDED DECISION OF THE
MAGISTRATE JUDGE**

The Magistrate Judge reviewed Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and recommended that the Court (1) deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255; (2) dismiss Petitioner's motion; and (3) deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases. The Court reviewed Petitioner's objections and concludes, as the Magistrate Judge did, that the Petitioner was not prejudiced as a result of any *Rehaif* error at the time of his initial plea, nor has he demonstrated evidence of factual innocence that would entitle him to postconviction relief. The Court therefore affirms the Magistrate Judge's Recommended Decision for the reasons in that decision and set forth in this affirmance.

## I.    BACKGROUND

### A.     Factual Background

#### 1.    2008 State Conviction

On April 28, 2008, Mr. Nunez entered a guilty plea to one count of Criminal Sale of a Controlled Substance in the Fifth Degree under New York state law, a Class D felony. *Suppl. Mem. in Supp. of Gov't's Resp. to Pet'r's Pro Se 28 U.S.C. § 2255 Pet. and Mot. for Summ. Dismissal*, Attach. 1, *New York v. Nunez Plea Tr.*, at 3:14-18 (ECF No. 71) (*Plea Tr.*).   The charge carried with it a minimum sentence of one year, and a maximum sentence of four and a half years, with the Court agreeing to impose a definite sentence of nine months' imprisonment. *Id.* at 5:11-18.   Before Mr. Nunez entered a guilty plea, the New York Court expressly warned Mr. Nunez that "[t]his [was] a felony." *Id.* at 6:14-20.

#### 2.    2015 Federal Conviction

On January 20, 2015, Mr. Nunez was charged by information in the District of Maine with one count of possessing a firearm after having been charged with a crime punishable by imprisonment of more than one year, a violation of 18 U.S.C. § 922(g). *Information* (ECF No. 2).   On January 20, 2015, Mr. Nunez formally waived indictment, *Waiver of Indictment* (ECF No. 1), and pleaded guilty to the offense. *Min. Entry* (ECF No. 11).   The information alleged that Mr. Nunez had been convicted under New York law on April 28, 2008, of Criminal Sale of a Controlled Substance, that this prior conviction was punishable by imprisonment for a term of more than one year, and that on July 23, 2012, he possessed in the District of Maine a Hi-Point .380 semi-automatic pistol. *Information* at 1.   On November 12, 2015, the Court sentenced Mr. Nunez to eighty-two months imprisonment and three years' supervised

2

release.  *Min. Entry* (ECF No. 40).  Mr. Nunez subsequently appealed his sentence to the First Circuit Court of Appeals.  *Notice of Appeal* (ECF No. 44).  On March 29, 2017, the First Circuit affirmed.  *United States v. Nunez*, 852 F.3d 141 (1st Cir. 2017).

### B.  Procedural Background

On March 25, 2020, Mr. Nunez filed a pro se motion to vacate, correct, or set aside his conviction under 28 U.S.C. § 2255, and requested an evidentiary hearing. *Mot. to Vacate Conviction & Sentence and Appointment of Counsel Pursuant to 28 USC 2255 & Writ of audita Querella, Rule 60(B)* (ECF No. 54) (*Pet'r's Mot.*).  Upon reviewing the record, the Magistrate Judge ordered the Government to file an answer, *Order to Answer* (ECF No. 56), which it did on September 11, 2020.  *Gov't's Resp. to Pet'r's Pro Se 28 U.S.C. § 2255 Pet. and Mot. for Summ. Dismissal* (ECF No. 69) (*Gov't's Opp'n*).  On October 20, 2020, Mr. Nunez filed a reply to the Government's response.  *(Pro Se) Nunez' Reply to the Gov't's 28 U.S.C. § 2255 Response* (ECF No. 70) (*Pet'r's Reply*).  On October 28, 2020, the Government filed a supplemental memorandum in support of its initial answer.  *Suppl. Mem. in Supp. of Gov't's Resp. to Pet'r's Pro Se 28 U.S.C. § 2255 Pet. and Mot. for Summ. Dismissal* (ECF No. 71) (*Gov't's Suppl.*).

On February 17, 2021, the Magistrate Judge issued a Recommended Decision, recommending that the Court dismiss Mr. Nunez's motion.  *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 72) (*Recommended Decision*).  Mr. Nunez filed an

3

objection[1] to the Recommended Decision on April 16, 2021. *(Pro Se) Mot. for Recons. Under Rule 60(1) or (6) to Toll the (14) Days to "Object" to the Magistrate's Feb. 17, 21, Recommendation and Grant to "Stay" Nunez' "Rehaif" Litigation In "Abeyance" Until the Supreme Court Decides United States-v-Gary #20-444 (2020) (ECF. No. 106); Alternative: Construe This Said Caption as a "Notice of Appeal (NOA)."* (ECF No. 73) (*Pet'r's Obj.*). The Government responded to Mr. Nunez's objection on May 7, 2021. *Gov't's Resp. to Pet'r's Pro Se Mot. for Recons. Regarding R. & R. Decision of Magistrate Judge and to Extend Time to File Objs.* (ECF No. 74) (*Gov't's Opp'n to Pet'r's Obj.*).

## II.   THE PARTIES' POSITIONS

### A.   Oscar Nunez's 28 U.S.C. § 2255 Motion

In his initial motion, Mr. Nunez makes three arguments. First, relying on the Supreme Court's 2019 decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Mr. Nunez argues that "[a]t no time did [he] 'know' that [because of] his status as a N.Y. state convicted felon, he was prohibited federally from possessing a firearm." *Pet'r's Mot.* at 2. "In the absence of this ["prohibited-status element"] being charged, or ple[d] in said charging documents, Petitioner is 'actually innocent' of said offense and his sentence and conviction contain a 'jurisdictional defect' that must be corrected." *Id.* at 2.

---

[1]      The Magistrate Judge accepted Mr. Nunez's April 16, 2021, motion as an objection to the Recommended Decision but set a new deadline to allow for Mr. Nunez to supplement the objection if he wished to do so. *Order on Mot. for Recons, Mot. to Stay Proceedings, and Mot. to Extend Time to File Obj.* (ECF No. 75).

Second, Mr. Nunez argues that under 18 U.S.C. § 921(a)(2), which "governs what constitutes a felony for purposes of 922(g) application, liability, & prosecution," his rights as a New York citizen, including his Second Amendment rights, were restored upon the expiration of his sentence for the New York state drug conviction. *Id.* at 3-4. Mr. Nunez argues that the "clear unambiguous import of this state statute is that, at the time of Petitioner's release from state custody on the state felony used to support the 922(g) [conviction] . . . he was not in fact, a prior felon, nor did he have a prior felony conviction for purposes of 922(g) jurisdiction prosecution or conviction." *Id.* Mr. Nunez asserts that he was "completely unaware that he was prohibited from exercising his 2nd Amendment Constitutional right to possess a firearm in the state of [M]ain[e] (federally) based on a prior N.Y. state conviction." *Id.* at 5. Mr. Nunez concludes that what happened in *Rehaif* "is exactly what happened to Petitioner" because "his civil rights were automatically restored, under N.Y. Law and at no point in time was he ever told he was prohibited from possessing a firearm." *Id.* at 4.

Finally, Mr. Nunez argues that the Court has the authority to vacate his conviction and sentence under Section 2255, a writ of Audita Querela, or Rule 60(B). *Id.* at 6-7.

### B.   The Government's Response

The Government first argues that "Petitioner's attack on the sufficiency of the charging document for failing to allege his knowledge that his status as a convicted felon prohibited from possessing a firearm is untimely, procedurally defaulted, and meritless." *Gov't's Opp'n* at 10. The Government asserts that *Rehaif* stands for the proposition that the Government must prove a defendant "knew he belonged to the

5

relevant category of person barred from possessing a firearm," not that the Government must "prove [that] a defendant knew he was legally prohibited from possessing a firearm." *Id.* (citing *Rehaif*). Thus, the Government argues, it must only "establish Petitioner's knowledge at the time he possessed the firearm that he was previously convicted of an offense punishable by more than one year in prison." *Id.* at 10. Additionally, "[t]he Supreme Court recognized no right in *Rehaif* regarding a defendant's knowledge that he was prohibited from possessing a firearm." *Id.*

The Government further asserts that Mr. Nunez's claim is defaulted because Mr. Nunez failed to raise this argument when he pleaded guilty, before or at sentencing, or on appeal. The Government urges that the claim is defaulted as Mr. Nunez has not demonstrated any "actual innocence" allowing him to raise this issue now. *Id.* at 11, 13. Finally, even if the claim was not defaulted, Mr. Nunez "does not aver or demonstrate ignorance as to the collateral matter of his 'status as a N.Y. state convicted felon.'" *Id.* at 12.

In response to Mr. Nunez's "claim that he was not in fact prohibited from possessing a firearm because his civil rights had been restored," *id.* at 13, the Government argues that "*Rehaif* should not be read to require the Government to prove that the Petitioner knew that his civil rights had not been restored after entry of his otherwise-disqualifying conviction." *Id.* at 15. The Government further argues that Mr. Nunez's "civil rights have not been restored within the meaning of 18 U.S.C. § 921(a)(20)" because Mr. Nunez's right to serve on a jury has not been restored nor did he receive any type of clemency. *Id.* at 17.

### C.    Oscar Nunez's Reply

In reply, Mr. Nunez states that "the Supreme Court Justices opinion [in *Rehaif*] was crystal clear that to convict a defendant under the lawful firearm possession statute . . . the Government must prove that the defendant knew he belonged to the relevant class of persons barred from possessing firearms, basically deprived of exercising his [S]econd [A]mendment." *Pet'r's Reply* at 1.

Mr. Nunez first contends that it is a fundamental principal of due process that he understand the "essential elements" of the offense at the time a plea is entered. *Id.* at 1-2. However, at the time of his plea "no one in the courtroom, including Nunez, his attorney, the government, (PSI) officer, or the judge, understood the 'essential elements' of the section 922(g) offense." *Id.* at 1-2. As a result, a *Rehaif* error occurred, which "is sufficient to undermine . . . confidence in the plea colloquy proceeding" meaning that "his guilty plea was involuntary . . . and must be vacated." *Id.* at 2. Mr. Nunez again asserts that because his plea was involuntary, he "has established actual innocence that was prejudicial" which "excuse[s] him of procedural default" so that he can "raise the issue before the District Court or Direct Appeal." *Id.*

Finally, Mr. Nunez contends that because he misunderstood the law he pleaded "guilty to conduct which the law had not made a crime." *Id.* at 3. Thus, his plea was "unintelligent." *Id.* Mr. Nunez concludes by stating that "he knew of his prior N.Y. felony conviction, but to his [] "knowledge' based on N.Y. law his civil rights were restored, and no one ever told him otherwise nor [] informed him during [his] prior state of N.Y. conviction and sentencing." *Id.* at 3. "[Mr.] Nunez[] had no 'knowledge' whatsoever that when he plead[ed] guilty to a prior felony conviction that

[carries] over a year and a day[,] his second amendment [right] to bear arms will never again apply to him." *Id.*

### D.   The Recommended Decision

The Magistrate Judge's decision begins with a succinct examination of § 2255 law, the *Rehaif* decision, and procedural default.   The Magistrate Judge first addressed whether Mr. Nunez's claim is defaulted.   The Magistrate Judge noted that "[i]n general, a claim that was not raised on appeal is procedurally defaulted." *Recommended Decision* at 7.   However, a default may be excused if a claim "is so novel that its legal basis is not reasonably available to counsel."   *Id.* at 8 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).   This can occur when there is a "'clear break from the past' in a new Supreme Court Case" where the decision "overturn[s] a longstanding and widespread practice to which [the Supreme Court] has not spoken." *Id.* (quoting *Ross*, 468 U.S. at 17).   Here, *Rehaif* overturned precedent "used in thousands of cases for more than 30 years."   *Id.* at 8 (quoting *Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting)).   The Magistrate Judge therefore found cause to excuse Mr. Nunez's procedural default.   *Id.* at 9.   Nonetheless, in the guilty plea context, the Magistrate Judge observed that Mr. Nunez must show "a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 9-10 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In addressing the *Rehaif* issue, the Magistrate Judge noted that Mr. Nunez "does not allege that he was unaware of having been convicted of a crime punishable by more than one year in prison."   *Id.* at 10.   Rather, he asserts that he did not know that, as a result of his felony conviction, he could not possess a firearm.   *Id.* at 10.

8

However, the Magistrate Judge rejected Mr. Nunez's position because "*Rehaif* requires that a defendant know that he or she has the status, but nothing requires a defendant also know that § 922(g) makes it illegal for someone with that status to possess firearms." *Id.* (citing *Rehaif*). The Magistrate Judge noted that the New York court warned Mr. Nunez about his maximum possible sentence, concluding "there is no probability that Petitioner's awareness of the knowledge-of-status element under *Rehaif* would have significantly impacted Petitioner's decision to go to trial or plead guilty." *Id.* at 11.

The Magistrate Judge next addressed Mr. Nunez's arguments that he is actually innocent, and that his rights were restored. The Magistrate Judge concluded that Mr. Nunez could not argue actual innocence because "the record reflects (and Petitioner does not dispute) that he knew he had previously been convicted of a crime punishable by more than one year in prison." *Id.*

The Magistrate Judge was similarly unpersuaded by Mr. Nunez's argument that § 921(a)(2) restored his rights, allowing him to possess a firearm despite his prior conviction. The Magistrate Judge looked to New York state law, concluding that New York only grants partial restoration of rights automatically, which does not meet the requirements of § 921(a)(2). *Id.* at 12 (citing *United States v. Bullock*, 550 F.3d 247, 250 (2d Cir. 2008)); *United States v. Hill*, 251 F. Supp. 2d 55, 58 (E.D.N.Y. 2005)). At the same time, the Magistrate Judge noted that some courts have acknowledged a *Rehaif* issue could be triggered by the mistaken applicability of § 921(a)(2). *Id.* However, the Magistrate Judge similarly rejected this argument in the context of this

case because "the record lacks any reliable evidence that Petitioner had a mistaken belief at the time of his firearm possession or guilty plea." *Id.* at 13. "Indeed, there is no evidence that Petitioner raised the restoration-of-rights issue as a defense to the possession charge in the trial court or on appeal." *Id.* Ultimately, the Magistrate Judge concluded that there was no evidence of prejudice or factual innocence that would entitle Mr. Nunez to postconviction relief. *Id.*

### E.    Mr. Nunez's Objection to the Recommended Decision[2]

In his objection to the Magistrate Judge's Recommended Decision, Mr. Nunez states that he "completely object[s] to everything the Magistrate stated why the *Rehaif* does not apply to him." *Pet'r's Obj.* at 1. Mr. Nunez further contests that the Magistrate "did not even consider Nunez' reply to the Government's § 2255 response." *Id.*

### F.    The Government's Response[3]

In response to Mr. Nunez's objection, the Government states that "Petitioner's general objection to the conclusions of the *Report and Recommended Decision* is undeveloped and without merit and should be rejected." *Gov't's Opp'n to Pet'r's Obj.* at 2. The Government states that "Petitioner's claim that the Magistrate Judge did not consider his *Reply* to the Government's *Response* is readily contradicted by the

---

[2]    Mr. Nunez's objection also included a motion for reconsideration under Rule 60(1), a motion to toll the fourteen days to object to the Recommended Decision, and a motion to stay the case. The Magistrate Judge separately addressed these issues in an order dated June 16, 2021. *Order on Mot. for Recons., Mot. to Stay Proceedings, and Mot. to Extend Time to File Obj.* (ECF No. 75). Mr. Nunez did not object to the Magistrate Judge's June 16, 2021 order and therefore the Court does not address these additional issues.

[3]    In its filing the Government also addressed Mr. Nunez's other motions, as discussed in the previous footnote. Because the Magistrate Judge separately addressed these arguments, this Order does not discuss those portions of the Government's filing.

content of the *Report and Recommended Decision* and the parties' pleadings that preceded that *Report*." *Id.* at 4. Ultimately, the Government's position is that "[t]he Magistrate Judge engaged in a thorough review of Petitioners' claims—including those raised in his *Reply*—and concluded upon careful application of legal principles to those claims that they should be rejected." *Id.* at 6. The Government asserts "[t]hat the Magistrate Judge reached a conclusion that Petitioner dislikes does not demonstrate that the Magistrate Judge reached an erroneous conclusion or ignored Petitioner's *Reply*." *Id.*

## III. DISCUSSION

### A. The Court Adopts the Recommended Decision

The Court has reviewed the Magistrate Judge's Recommended Decision de novo and considered Mr. Nunez's § 2255 Motion, his objection to the Recommended Decision, and other relevant filings. The Court concurs with the recommendations of the Magistrate Judge for the reasons set forth in his Recommended Decision as further elaborated here. *Gov't Opp'n to Pet'r's Obj.* at 2. The Court views the Recommended Decision as substantively correct, and the Court adopts and affirms the decision in its entirety. In addition to the contents of the Recommended Decision, the Court writes to address Mr. Nunez's objections and to elaborate, as necessary, on the Recommended Decision.

### B. The Federal Rule of Civil Procedure 72 Standard

Rule 72 of the Federal Rules of Civil Procedure states that "a party may serve and file *specific* written objections to the proposed findings and recommendations" of

a magistrate judge.  FED. R. CIV. P. 72(b)(2) (emphasis added); 28 U.S.C § 636(b) (stating the same).  A proper objection requires "identifying the *particular portions* of the report and recommendation to which objection is being made and to specify the basis for each such objection." *Nogueras-Cartagena v. United States DOJ*, 75 F. App'x 795, 797 (1st Cir. 2003) (emphasis added).  "Absent objection . . . [a] district court has a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *M. v. Falmouth Sch. Dep't*, 847 F.3d 19, 25 (1st Cir. 2017) (quoting *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985) (alterations in *Falmouth Sch. Dep't*).  In such a situation the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  FED. R. CIV. P. 72, advisory committee notes to 1983 rule adoption; *Cortés-Rivera v. Dep't of Corr. & Rehab.*, 626 F.3d 21, 27 (1st Cir. 2010).

### 1.   "Completely Objects to Everything"

In his objection, Mr. Nunez states that he "completely object[s] to everything the Magistrate stated why the *Rehaif* [decision] does not apply to him."  *Pet'r's Obj.* at 1.  Mr. Nunez's objection is a blanket statement referring broadly to the entirety of the Magistrate Judge's decision.  Such an objection is not proper because he has not identified "particular portions" and "specific" issues in the Magistrate Judge's decision that he disagrees with other than generally citing *Rehaif*.

Moreover, Mr. Nunez's objection merely rehashes his earlier arguments regarding *Rehaif* which is similarly improper.  *See e.g., Sigui v. M + M Communs., Inc.*, 310 F. Supp. 3d 313, 319 (D.R.I. 2018) (rejecting an objection "simply [ ] parroting

[ ] arguments previously made to the Magistrate judge" because "[w]hile review of the Magistrate Judge's R&R is de novo, it is not an opportunity to re-run every argument made to the Magistrate Judge"). Ultimately, because Mr. Nunez's objections to the Recommended Decision are not "specific" within the meaning of Rule 72(b)(2) and 28 U.S.C. § 636(b), the Court limits its analysis to whether there is "clear error on the face of the record." FED. R. CIV. P. 72, advisory committee notes to 1983 rule adoption. Based on this Court's review of the Recommended Decision, in the absence of any specific objections, the Court concludes that the Magistrate's Recommended Decision contains no clear error.

### C.     The Magistrate Judge's Response to Oscar Nunez's Arguments

The Court also rejects Mr. Nunez's contention that the Magistrate Judge failed to respond to any of the arguments he made in reply to the government's response. *Pet'r's Obj.* at 1. In his Reply, Mr. Nunez argued: (1) that he did not understand the "essential elements" of the crime when he pled guilty and thus his plea was involuntary and his sentence should be vacated, *Pet'r's Reply* at 1-3; (2) that he was actually innocent of the charge, *id.* at 2-3; and (3) that New York restored his civil rights, and when he pleaded guilty, he had no knowledge he would be unable to possess a firearm. *Id.* at 3.

First, the Magistrate Judge carefully reviewed the Supreme Court's decision in *Rehaif* and correctly concluded that under *Rehaif*, the government must prove that a defendant knew his "status," i.e., that he was a convicted felon, at the same time that he possessed a firearm. *Recommended Decision* at 5; *Rehaif*, 139 S. Ct. at 2196.

The Court agrees with the Magistrate Judge's understanding of *Rehaif* that "status" refers to knowledge that one has been convicted of a felony, not knowledge that one is barred from possessing a firearm. *See United States v. Minor*, No. 2:17-CR-21-DBH, 2019 U.S. Dist. LEXIS 227551, at *1 (D. Me. Oct. 17, 2019); *Rehaif*, 139 S. Ct. at 2194. Here, the record confirms that Mr. Nunez knew he had been convicted of a felony, and he admitted as much in his briefing, thus foreclosing any *Rehaif* error. *See Pet'r's Reply* at 3. Moreover, because Mr. Nunez was aware of his status, he understood all "essential elements," which, as the Magistrate Judge rightly concluded, forecloses the argument that Mr. Nunez's plea was involuntary. *See Recommended Decision* at 10-11. The Magistrate Judge similarly addressed and precluded Mr. Nunez's innocence argument on the same grounds. *Id.* at 11.

Finally, the Magistrate Judge discussed the issue of rights restoration. The Magistrate Judge went so far as to acknowledge that some courts consider mistaking the applicability of § 921(a)(2) a potential *Rehaif* issue, but concluded there was no evidence on the record suggesting Mr. Nunez was mistaken about the statute at the time of the guilty plea. *Id.* at 12-13. The Court agrees with the Magistrate Judge's conclusion on rights restoration but offers a slightly different analysis.

### D.   First Circuit Law Post-*Rehaif*

The Court begins with a review of the First Circuit's response to post-*Rehaif* claims. Faced with a claim like Mr. Nunez's, the First Circuit confirmed that it would review a challenge to a guilty plea for "plain error." *United States v. Patrone*, 985 F.3d 81, 83 (1st Cir. 2021), *cert. denied*, 211 L. Ed. 2d 77 (Oct. 4, 2021); *see United*

*States v. Farmer*, 988 F.3d 55, 61 (1st Cir. 2021). To establish "plain error," the defendant must show "(1) an error, (2) that is clearly obvious, (3) which affects his substantial rights . . ., and which (4) seriously impugns the fairness, integrity or public reputation of the proceedings." *United States v. Burghardt*, 939 F.3d 397, 403 (1st Cir. 2019) (quoting *United States v. Correa-Osorio*, 784 F.3d 11, 17-18 (1st Cir. 2015)).

Where, as with Mr. Nunez, a defendant entered a guilty plea to a firearms charge potentially affected by *Rehaif*, the First Circuit concluded that the trial judge would be deemed to have committed error and that the error would be clearly obvious, satisfying the first two steps of the plain error standard. *Patrone*, 985 F.3d at 85. The *Patrone* Court turned to the last two steps: whether the error affects substantial rights and seriously impugns the proceedings.[4] *Id.* In *Patrone*, the First Circuit set forth the standard for "an unpreserved claim of *Rehaif* error," namely that the defendant must demonstrate prejudice, "i.e., were his substantial rights affected," in the form of "a reasonable probability that, but for this purported error, he would not have pled guilty." *Id.* at 85 (quoting *Burghardt*, 939 F.3d at 403). Put differently, the question is "whether there is a reasonable probability that, but for the error, the outcome of the proceedings would have been different." *Id.* at 86.

---

[4]     The First Circuit acknowledged that the Fourth Circuit had ruled that it would consider such a *Rehaif* error a "structural error," one that "per se adversely affects a defendant's substantive rights." *Id.* (citing *United States v. Gary*, 954 F.3d 194, 203-05 (4th Cir. 2020)). But, as the First Circuit foresaw, the United States Supreme Court subsequently rejected the Fourth Circuit's structural error ruling and concluded that defendants convicted of "felon in possession" offenses before *Rehaif* would have to show plain error and demonstrate that the *Rehaif* error affected their substantial rights because they would have presented trial evidence that they did not know they were felons. *Greer v. United States*, 141 S. Ct. 2090, 2100-01 (2021).

Under *Patrone*, a court must first assess "the likelihood of a conviction in light of the scienter-of-status element that the government must prove." *Id.* at 86. However, the inquiry "does not end" with the answer to that question. *Id.* The court also looks at "other considerations" that "bear heavily on a defendant's decision to plead guilty." *Id.* For example, in *Patrone*, the First Circuit noted Mr. Patrone's guilty plea to the accompanying drug charge, the impact that a not-guilty verdict on the firearms charge would have had on the guideline range for the drug charge, and the possibility that by going to trial, the three-level reduction for acceptance of responsibility could well have been lost. *Id.* at 86-87.

The *Patrone* Court carefully examined the facts underlying the defendant's case. *Id.* at 86-87. In *Patrone*, the defendant had been charged with possession of a firearm by an alien who was unlawfully in the United States. *Id.* at 84 (citing 18 U.S.C. § 922(g)(5)(A)). The First Circuit concluded that the evidence in the record that the defendant knew he was an illegal alien was "sparse," far from the "overwhelming proof" of guilt that the First Circuit required to find no prejudice in *Burghardt*. *Id.* at 86. Yet, the *Patrone* Court went on to examine the entire record, including the benefit the defendant received from a three-level reduction under the United States Sentencing Guidelines for acceptance of responsibility, concluding that he had "fail[ed] to establish that his substantial rights were affected by the district court's failure to anticipate *Rehaif*." *Id.* at 87-88.

In a case more like Mr. Nunez's case, *United States v. Farmer*, the First Circuit had little trouble concluding, in its risk/benefit analysis, that a defendant who had

served three years in prison on a robbery conviction "could not have plausibly thought that *Rehaif* in any way increased his chances of an acquittal, and he would have risked losing an acceptance of responsibility sentencing reduction by not pleading guilty."  988 F.3d at 62; *see United States v. Macarthur*, Nos. 1:12-cv-00084-JAW, 1:17-cv-00383-JAW, 2021 U.S. Dist. LEXIS 38781 at *21-24 (D. Me. Mar. 2, 2021).

### E.  *Patrone* Applied

Applying *Patrone* to Mr. Nunez's case, the facts lead to the same conclusion as the First Circuit reached in *Patrone* and *Farmer*: Mr. Nunez has failed "to establish that his substantial rights were affected by the Court's failure to anticipate *Rehaif*." *Patrone*, 985 F.3d at 88.  Here, the evidence of Mr. Nunez's guilt of the felon in possession charge would virtually assure his conviction, should he have gone to trial, and the risk/benefit analysis shows that virtually all defendants would have pleaded guilty under the facts of this case.

### 1.  Overwhelming Evidence of Guilt

Mr. Nunez submits he would not have pleaded guilty because, unlike the "sparse" record of guilt in *Patrone*, he had no knowledge that possession of the firearm was unlawful based on his status.  The Court disagrees.  The record here contains overwhelming evidence of Mr. Nunez's guilt of the crime of possession of a firearm by a felon.  The Prosecution Version confirms that on April 28, 2008, Mr. Nunez was convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: Criminal Sale of a Controlled Substance in the Third Degree, N.Y. Penal Law §

220.39[1] (Apr. 28, 2008). *Gov't's Proposal of Facts and Version of Offense* at 1 (ECF No. 5).

The Prosecution Version also contained a plethora of evidence that following that conviction, Mr. Nunez possessed a Hi Point .380 pistol in Maine. *Id.* at 2-3. The Prosecution Version asserts that a man, David Ireland, who once worked for Mr. Nunez identified him as a drug dealer and said that Mr. Nunez possessed a black, semi-automatic Hi Point .380 pistol. *Id.* at 1. The Prosecution Version went on to state that when law enforcement searched the premises where Mr. Nunez lived, they found a black, semi-automatic Hi Point .380 caliber handgun in the eaves of the home. *Id.* at 2. Furthermore, a Forensic DNA Analyst, employed by the Maine State Police Crime Lab, would have testified that, except for identical twins or close relatives, the DNA from the magazine of the handgun came from Mr. Nunez. *Id.* at 2-3.

Moreover, if the Court had predicted *Rehaif* and required the Government to produce evidence that Mr. Nunez knew he was a felon, the transcript of the April 28, 2008 state of New York colloquy amply confirms that Mr. Nunez was aware he was pleading guilty to a felony. First, Mr. Nunez's lawyer described the guilty plea as being to a felony:

> MR. VALLE: . . . [H]e authorizes me to withdraw his previously entered plea of not guilty and enter a plea of guilty on Indictment 4713/-7 to <u>a D felony, Criminal Sale of a Controlled Substance in Fifth Degree,</u> understanding that Your Honor will sentence him to nine months.

*Plea Tr.* 3:3-7 (emphasis supplied). Next, the Court then directly addressed Mr. Nunez:

> THE COURT: Mr. Nunez, Mr. Valle has said that you want to withdraw your not guilty plea and offer instead to plead guilty to the crime of Criminal Sale of a Controlled Substance in the Fifth <u>Degree, a Class D felony;</u> is that correct?  Is that correct?

*Id.* 3:14-18 (emphasis supplied).  Mr. Nunez confirmed that he wished to plead guilty:

"Yes, sir." *Id.* 3:19.  After the Judge described the rights that Mr. Nunez was waiving

by pleading guilty, the Judge reiterated that the charge was a felony:

> THE COURT: Now, the principle count in this indictment was a Class B felony.  Had you been convicted after trial, you would face a minimum state prison sentence of one year, a maximum of nine years.  But <u>by pleading guilty to the D felony, the minimum state sentence is one year, the maximum is four and a half years.</u>  However, is it your understanding that I have agreed to impose a definite sentence of nine months on your guilty plea, which means that sentence will be served with the New York City Department of Corrections?  Is that your understanding?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is that correct?
>
> THE DEFENDANT: Yes.

*Id.* 5:9-22 (emphasis supplied).  Finally, the Court again informed Mr. Nunez that he

was pleading guilty to a felony and this conviction could have adverse repercussions

if he committed another felony within ten years:

> THE COURT: <u>This is a felony.</u>  And if you are convicted of another felony within the next ten years, excluding any time in prison, the next time you could be sentenced as a predicate felon and serve a mandatory state prison sentence.  And if you have any other felonies after that, eventually you will be sentenced as a multiple felony offender.

*Id.* 6:14-20.  Thus, during his 2008 New York guilty plea, he was informed four times,

once by his own attorney and three times by the Judge, that he was pleading guilty

to a felony.  Consistent with *Rehaif* the Government would have had to prove that

Mr. Nunez knew "he had been convicted of a crime punishable by imprisonment for a term exceeding one year when he possessed the gun," *Farmer*, 988 F.3d at 60. The plea colloquy for his 2008 New York state crime would have been proof positive that he knew of his felony status.

### a.   The Restoration Argument

In his motion, Mr. Nunez referred to the statutory provision of New York state law that suspends a convicted person's civil rights only during the term of that person's sentence. *Pet'r's Mot.* at 3-5. In the Recommended Decision, the Magistrate Judge addressed this contention in detail. *Recommended Decision* at 11-13. Faced with Mr. Nunez's general objection to the Magistrate Judge's Recommended Decision, the Court views as entirely correct the Magistrate Judge's analysis of the civil rights restoration issue.

The Court adds one point. On January 29, 2015, just after Mr. Nunez pleaded guilty but well before he was sentenced, the Director of the Executive Clemency Bureau wrote a letter expressly stating that "no type of executive clemency or restoration of firearm privileges has ever been granted to Oscar Nunez." *Gov't's Opp'n*, Attach. 2., *Dep't of Corrections and Community Supervision Executive Clemency Bureau* at 1. To the extent that Mr. Nunez now claims that he was granted executive clemency or that his firearm privileges had been restored in New York State, the Director's letter presents another obstacle to his position.

### 2.   Plea and Sentencing Considerations

As the First Circuit explained in *Patrone* and *Farmer*, the Court should undertake a "risk/benefit" analysis of whether, despite the minimal chance that he would have been found not guilty, Mr. Nunez "could have plausibly thought that requiring the government to prove the scienter-of-status element beyond a reasonable doubt would have created a decent enough shot at acquittal to outweigh the risk of a marginally longer sentence should he go to trial and lose." *Farmer*, 888 F.3d. at 61-62; *see also Patrone*, 985 F.3d at 87; *Burghardt*, 939 F.3d at 403-06.

The risk-benefit analysis in Mr. Nunez's case is retrospectively complicated because of the number of moving parts in his case. First, in the same timeframe as he committed this federal crime, Mr. Nunez had committed several state crimes, both in Maine and Massachusetts, that had a potential impact on his federal sentence. *PSR* ¶¶ 30-32. Next, the Probation Office had recommended that Mr. Nunez receive multiple Guideline increases on the premise that he had possessed six Molotov cocktails. *Id.* ¶¶ 12-15. At the same time, Mr. Nunez faced a statutory maximum sentence of 120 months for the federal felon in possession charge. *Id.* ¶ 49.

### a.   Other Criminal Charges

Turning first to his recent criminal charges, on August 17, 2012, commonwealth of Massachusetts authorities arrested Mr. Nunez and charged him with possession of crack cocaine with the intent to distribute. *Id.* ¶ 32. On December 5, 2012, Mr. Nunez was sentenced to 110 days of incarceration. *Id.* By the time he came for federal sentencing in this case on November 12, 2015, he had fully served his Massachusetts sentence and the Probation Office did not consider this conviction

to be relevant conduct to his federal crime. *Id.* (assessing two criminal history points for this conviction).

When Massachusetts authorities stopped Mr. Nunez on August 17, 2012, they discovered that he was subject to an outstanding warrant from charges pending in Hancock County Superior Court in Maine. *Id.* ¶¶ 31-32. The Hancock County charges consisted of an unlawful possession of a scheduled drug charge along with a criminal forfeiture of property charge. *Id.* ¶ 31. Mr. Nunez was transported to Maine to face those pending state charges, and on November 12, 2013, Mr. Nunez was sentenced in Hancock County Superior Court to three years of incarceration. *Id.* By the time he appeared for his federal sentencing, he had completed his state sentence on the Hancock County charges. *Tr. of Proceedings*, *Sentencing* 7:18-8:1 (ECF No. 48) (*Sentencing Tr.*) (confirming that Mr. Nunez was released from the Hancock County case on August 6, 2015).

In addition to these two convictions for which the sentences had been discharged, Mr. Nunez had pleaded guilty in state of Maine District Court to arson and two counts of criminal threatening with a weapon. *PSR* ¶ 30. Mr. Nunez was scheduled to be sentenced later in the day on November 12, 2015 in state court for those violations. *Sentencing Tr.* 9:25. According to the PSR, the recommended sentence for these violations was going to be twenty-four years with all but fourteen suspended. *Id.* ¶ 30. The Probation Office deemed these criminal violations relevant conduct to this federal charge. *Id.*

22

With these increases, Mr. Nunez's Guideline sentence range was an adjusted offense level of 27 with acceptance, which when his criminal history category of V was applied, resulted in a Guideline sentencing range of 120 to 150 months, reduced by the statutory maximum sentence of 10 years to 120 months. *J.* Attach. 1 at 2 (ECF No. 43). Without the enhancements, Mr. Nunez's base offense level would have been reduced to 20, his total offense level would have been 21, and with a criminal history category of V, his Guideline sentence range would have been 70-87 months. *Def.'s Sentencing Mem.* at 2-3 & n.1 (ECF No. 31).

> ### b. The Guideline Enhancements and Sentencing Credits

To describe the Guideline issues at the time of Mr. Nunez's federal sentencing hearing, the Court returns to the circumstances surrounding his possession of the Hi-Point .380 ACP pistol. On July 22, 2012, the Penobscot County Sheriff's Office received a report of arson and shots being fired at a home in Orrington, Maine. *PSR* ¶ 3. Witnesses confirmed that a van had pulled up outside the home, two males had exited the van, and one of the males was carrying what looked like "twelve-packs," one in each hand. *Id.* As the vehicle pulled away, the witnesses heard gunshots. *Id.* The investigation revealed that the soil around the home was positive for ignitable fluids. *Id.*

David Ireland, a renter at the Orrington home, confirmed that he had known Mr. Nunez for about five or six months and had worked for him by driving him around to sell drugs. *Id.* ¶ 4. He also said that Mr. Nunez was a known crack cocaine dealer. *Id.* Mr. Ireland told law enforcement that when he informed Mr. Nunez that he did

not want to drive for him anymore, Mr. Nunez became upset.  *Id.*  He claimed that

Mr. Nunez had come to his Orrington home on June 16, 2012 and threated him with

a handgun.  *Id.*  Mr. Ireland said that Mr. Nunez took Mr. Ireland's cellphone and his

17-year-old son's cellphone too.  *Id.*  Then in early July 2012, Mr. Nunez had tried to

run Mr. Ireland off the road.  *Id.*

On July 22, 2012, law enforcement obtained a "no knock" search warrant for

Mr. Nunez's home on Verona Island in Maine.  *Id.* ¶ 5.  Once there in the early

morning hours of July 23, 2012, law enforcement found the Hi-Point pistol with

ammunition and outside under the deck, they located two red plastic gas cans and six

Molotov cocktails.  *Id.*

In the PSR, the Probation Office recommended that the Court find that Mr.

Nunez constructively possessed the Molotov cocktails.  The First Circuit described

the significance of this issue:

> [T]he court made a series of determinations that yielded a [Guideline
> Sentencing Range] GSR of 120 [to] 150 months.  That range, which was
> capped at 120 months by virtue of the maximum sentence allowed under
> the statute of conviction, see 18 U.S.C. § 924(a)(2), hinged in substantial
> part on a factual finding that the appellant possessed the six Molotov
> cocktails discovered in the search.  For sentencing purposes, each
> Molotov cocktail was considered both a firearm and a destructive device.
> See id. § 921(a); 26 U.S.C. § 5845; see also USSG § 2K2.1, cmt. n.1.
> Consequently, this finding increased the GSR (and, thus, adversely
> affected the appellant's sentence) in three ways: it boosted his base
> offense level, see USSG § 2K2.1(a)(3); it triggered a two-level
> enhancement for possessing three or more firearms, see id. §
> 2K2.1(b)(1)(A); and it brought into play an additional two-level
> "destructive device" enhancement, see id. § 2K2.1(b)(3)(B).

*Nuñez*, 852 F.3d at 144.  Mr. Nunez objected to the Probation Office's Guideline

calculation and urged the Court to conclude that he was not in constructive

possession of the Molotov cocktails. *Sentencing Tr.* 29:6-20. If the Court did not find for the Government on this issue, Mr. Nunez's base offense level would have been reduced to 20 under U.S.S.G. § 2K2.1(a)(4)(A) and neither the two-level enhancement for the number of destructive devices nor the two-level for possession of a destructive device would apply. *Id.* The result would be a guideline sentencing range of 70 to 87 months. *Id.*

A second Guideline issue at his sentencing hearing on this federal crime was whether and the extent to which Mr. Nunez should be credited in his federal sentence for the time he had served as a result of the Hancock County sentence. It turned out that the firearm forfeited in the Hancock County case was the same Hi-Point .380 pistol his possession of which formed the basis for the federal charge. *Id.* 48:16-49:4. Under U.S.S.G. § 5G2.23, the Court had the authority to credit or not to credit the discharged term of imprisonment "to achieve a reasonable punishment for the instant offense."

Approaching the federal sentence, if the issues broke in Mr. Nunez's favor, he would have faced a guideline sentence range of 70 to 87 months and a credit for the 32 months he served on the Hancock County case for a net federal sentence of between 38 and 55 months of incarceration. If the Court found that the guideline enhancements applied, he faced a guideline sentence range of 120 to 150 months, capped by the 120-month statutory maximum, and the possibility of a 32-month credit for a net federal sentence of 88 months.

c.    **To Plead or Not to Plead**

This analysis is based on the guideline range of sentence if Mr. Nunez pleaded guilty and obtained acceptance of responsibility.  If Mr. Nunez had declined to plead guilty and had gone to trial and if he had been found guilty, he likely would have been denied the three-level reduction for acceptance of responsibility.  Using the Probation Office's calculations, his total offense level (assuming the guideline enhancements applied) would have been 30.  *PSR* ¶ 20-24.  With a total offense level of 30 and a criminal history category of V, his guideline sentence range would have been 151-188, capped by 120 months.  If the enhancements did not apply and he did not get acceptance of responsibility, his total offense level would have been 23 and with a criminal history category of V, he would have faced a guideline sentencing range of 84 to 105 months.

A second factor would have been how the Court would have viewed its discretionary authority under U.S.S.G. § 5G2.23 to credit or not to credit his Hancock County discharged sentence against his federal time.  Mr. Nunez had been involved in an egregious series of crimes in a short period, including an arson with Molotov cocktails of a person's residence, drug dealing in both Maine and Massachusetts, and firearm possession after a felony conviction.  Whether Mr. Nunez pleaded guilty or went to trial and contested his guilt may have been a factor the sentencing court would have evaluated in deciding, as it did, whether and how much to credit his Hancock County discharged sentence against his federal sentence.  Because he pleaded guilty, Mr. Nunez was able to argue that he should be credited for his acceptance of responsibility, a point the Government conceded in making its

sentencing recommendation.   *Sentencing Tr.* at 45:20-46:1 (recommending 114 months of incarceration due to acceptance of responsibility).   But if Mr. Nunez had contested the federal firearms possession charge and Mr. Nunez had faced a Guideline sentence range well in excess of the statutory maximum, the sentencing court may have weighed more heavily his risk of recidivism and the need to protect the public and the Court may have refused to credit all or a substantial portion of his Hancock County sentence against his federal sentence.

### 3.   Summary

As the Court noted earlier, a retrospective analysis under *Patrone* of Mr. Nunez's decision-making is complex.   But, in the Court's view, when measured against the minimal chance of an acquittal, Mr. Nunez's decision to plead guilty, to challenge the sentencing guideline enhancements, to urge a full credit for Hancock County time already served, and to stress his acceptance of responsibility lead to the conclusion that Mr. Nunez "could not have plausibly thought that *Rehaif* in any way increased his chances of an acquittal, and he would have risked losing an acceptance of responsibility sentencing reduction by not pleading guilty." *Farmer*, 988 F.3d at 62.   Furthermore, in Mr. Nunez's case, he would have risked not only losing acceptance but also his claim for a credit on his fully discharged Hancock County period of incarceration.   With enhancements and the increased likelihood of receiving a full credit for his state sentence, by pleading guilty Mr. Nunez's maximum sentence would have been 88 months, compared to a maximum of 120 months if he had gone to trial, after which he would have been less likely to have his state incarceration

credited. Given the overwhelming weight of evidence against Mr. Nunez, the benefits of going to trial compared to the risks were so slight as to be negligible.  Finally, even though the two are not directly related, the Court may have been more skeptical of Mr. Nunez's factual arguments about the Probation Office's recommended enhancements had he gone to trial.

## IV.     CONCLUSION

The Court AFFIRMS the Recommended Decision of the Magistrate Judge (ECF No. 72), DISMISSES Petitioner's motion to vacate, set aside or correct sentence without prejudice (ECF No. 54), and DENIES a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases.

SO ORDERED.


<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of November, 2021